UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| SANDRA SOLIS, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-00878<br>FED. R. CIV. P. 23 Class Action |
| v. | |
| WEXFORD HEALTH SOURCES, INC. | Jury Trial Demanded |

**ORIGINAL CLASS ACTION COMPLAINT**

**SUMMARY**

1. Like many other companies across the United States, Wexford Health Sources, Inc.'s ("Wexford") Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Wexford's organization, including New Mexico.

3. As a result, Wexford's workers who were not exempt from overtime under federal and state law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the Kronos outage.

4. Sandra Solis is one such Wexford worker.

5. Wexford's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6. Wexford's failure to pay wages, including proper overtime, on time and in full for all hours worked to its workers in New Mexico also violates New Mexico law, including the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-19 *et seq.*

7. Sandra Solis worked for Wexford during the Kronos outage and was affected by these pay practices just like Wexford's other workers in New Mexico.

8. This action seeks to recover the unpaid wages and other damages Wexford owes Solis and these all these workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal and New Mexico law.

### JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

12. Solis worked for Wexford in this District and Division.

### PARTIES

13. **Plaintiff Sandra Solis** is a natural person.

14. Solis is and was, at all relevant times, an employee of Wexford.

15. Solis has worked for Wexford since October 2016.

16. During the Kronos outage, Solis worked for Wexford in New Mexico.

17. Solis represents a class of similarly situated workers under New Mexico law pursuant to Federal Rule of Civil Procedure 23. This "New Mexico Class" is defined as:

> **All current or former non-exempt employees of Wexford, who worked in New Mexico at any time during payroll cycles affected by Wexford's Kronos service outage, beginning on or about December 11, 2021, until the time that Wexford regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

18. Throughout this Complaint, the New Mexico Class members are also referred as the "Similarly Situated Workers."

19. **Defendant Wexford Health Sources, Inc. ("Wexford")** is a foreign corporation.

20. Wexford conducts business in a systematic and continuous manner throughout New Mexico.

21. Wexford may be served by service upon its registered agent, **Corporation Service Company, 110 E. Boardway St., Hobbs, NM 88240**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

22. At all relevant times, Wexford was an employer of Solis within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. Wexford was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. During at least the last three years, Wexford has had gross annual sales in excess of $500,000.

25. Wexford was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

26. Wexford employs many workers, including Solis, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

27. The goods and materials handled, sold, or otherwise worked on by Solis, and other Wexford employees and that have been moved in interstate commerce include, but are not limited to, computers, peripherals, and electronic equipment.

## FACTS

28. Wexford provides health care programs for persons that are committed in civil and criminal correctional facilities.

29. Many of Wexford's employees are non-exempt hourly and salaried workers.

30. Since at least 2021, Wexford has used Kronos timekeeping software and hardware operated and maintained.

31. On or about December 11, 2021, the Kronos system suffered a disruption in service due to a ransomware attack.

32. The Kronos outage interfered with the ability of its customers, including Wexford, to use Kronos software and hardware to track hours and pay employees.

33. For at least a portion of time following the Kronos outage, Wexford failed to accurately track the hours that Solis and Similarly Situated Workers worked.

34. For at least a portion of time following the Kronos outage, Wexford failed to correctly pay Solis and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

35. Instead, Wexford has used various methods to estimate the number of hours Solis and Similarly Situated Workers work in each pay period.

36. As a result of Wexford's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

37. As a result of Wexford's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

38. As a result of Wexford's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

39. Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

40. Solis is one of the many Wexford employees affected by these pay and timekeeping practices.

41. Solis works over 40 hours per week each week for Wexford.

42. Solis has worked 40 hours, or more, each week since the time of the outage in December 2021.

43. But Solis was not paid the proper overtime premium for all hours worked on time, if at all, for each of these weeks since the onset of the Kronos service disruption, on or about December 11, 2021.

44. Instead of paying Solis for the hours she actually worked (including overtime hours), Wexford failed to pay Solis for her actual hours worked and at her agreed rates of pay, in multiple workweeks.

45. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

46. Wexford knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

47. Wexford knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates.

48. Wexford could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

49. But Wexford did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and/or at the regular rates at which they were supposed to be paid.

50. It was feasible for Wexford to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

51. But Wexford failed to put a competent system in place to ensure that happened.

52. In other words, Wexford pushed the effects of the Kronos outage onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

53. An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

54. Yet, in the wake of the Kronos outage, that is exactly what Wexford did.

55. Solis is just one of the many Wexford employees who had to shoulder the burden of Wexford's timekeeping and payroll policies and practices.

56. Solis was a non-exempt hourly employee of Wexford.

57. Solis regularly worked over 40 hours per week for Wexford.

58. Solis's normal, pre-Kronos outage hours are reflected in Wexford's records.

59. Solis regularly worked over 40 hours per week for Wexford during payroll cycles affected by the Kronos outage.

60. In payroll cycles affected by the Kronos outage, Wexford did not timely pay Solis and its other workers for their actual hours worked each week.

61. In payroll cycles affected by the Kronos outage, Wexford did not accurately record the hours worked by Solis and its other workers, in multiple workweeks.

62. Wexford was aware of the overtime requirements of the FLSA.

63. Wexford nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Solis.

64. Wexford's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

65. The full overtime wages owed to Solis and the Similarly Situated Workers became "unpaid" when the work for Wexford was done—that is, on Solis and the Similarly Situated Workers' regular paydays. *See*, *e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

66. At the time Wexford failed to pay Solis and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Wexford became liable for all

prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and New Mexico law.

67. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

68. Any payment made by Wexford to Solis or the Similarly Situated Workers that Wexford may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

69. The untimely payment of wages owed under the FLSA does not, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

70. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Wexford's acts and omissions resulting in the unpaid wages in the first place.

71. Solis and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Wexford under federal and New Mexico law.

## CLASS ACTION ALLEGATIONS

72. The illegal practices Wexford imposed on Solis were likewise imposed on the New Mexico Class members.

73. Numerous other individuals who worked for Wexford were were not timely and properly compensated for all hours worked, as required by New Mexico law.

74. The New Mexico Class is so numerous that joinder of all members of the class is impracticable.

75. Wexford imposed uniform practices and policies on Solis and the New Mexico Class members regardless of any individualized factors.

76. Based on her experience and tenure with Wexford, as well as coverage of the Kronos hack, Solis is aware that Wexford's illegal practices were imposed on the New Mexico Class members.

77. New Mexico Class members were all not timely paid proper overtime when they worked in excess of 40 hours per week.

78. Wexford's failure to pay wages and overtime compensation in accordance with New Mexico law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New Mexico Class members.

79. Solis's experiences are therefore typical of the experiences of the New Mexico Class members.

80. Solis has no interest contrary to, or in conflict with, the members of the New Mexico Class. Like each member of the proposed class, Solis has an interest in obtaining the unpaid wages and other damages owed under the law.

81. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

82. Solis has retained experienced counsel who are well-versed in wage-and-hour class actions and who will adequately represent the interests of the class.

83. Absent this action, many New Mexico Class members likely will not obtain redress of their injuries and Wexford will reap the unjust benefits of violating New Mexico law.

84. Furthermore, even if some of the New Mexico Class members could afford individual litigation against Wexford, it would be unduly burdensome to the judicial system.

85. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

86. The questions of law and fact common to each of the New Mexico Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Solis and the New Mexico Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b. Whether Wexford's failure to pay Solis and the New Mexico Class members their proper overtime rates overtime violated the NMMWA;

    c. Whether Wexford knowingly benefitted from its pay practices and policies at the expense of the New Mexico Class Members.

87. Solis's claims are typical of the New Mexico Class members. Solis and the New Mexico Class members have all sustained damages arising out of Wexford's illegal and uniform employment policies.

88. Solis knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

89. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

**FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA**
**AS TO SOLIS (INDIVIDUALLY)**

90. Solis incorporates each allegation set forth in paragraphs 1 to 89.

91. By failing to pay Solis overtime at 1.5 times her regular rates, Wexford violated the FLSA. 29 U.S.C. § 207(a).

92. Wexford owes Solis overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times her regular rates of pay.

93. Wexford owes Solis the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

94. Likewise, Wexford owes Solis her agreed-upon rates of pay for all hours worked up to and including 40 each week in which she worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 788.305.

95. Wexford knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Solis the compensation owed to her under the FLSA.

96. Because Wexford knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Wexford owes these wages for at least the past three years.

97. Wexford's failure to pay compensation owed under the FLSA to Solis was neither reasonable, nor was the decision not to pay overtime made in good faith.

98. Because Wexford's decision not to pay overtime was not made in good faith, Wexford also owes Solis an amount equal to the unpaid wages as liquidated damages.

99. Accordingly, Solis is entitled to their unpaid wages under the FLSA, including her agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x her regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO SOLIS AND THE NEW MEXICO CLASS

100. Solis incorporates each allegation set forth in paragraphs 1 to 89.

101. Wexford was and is an "employer" within the meaning of the NMMWA.

102. At all relevant times, Wexford employed Solis and the other New Mexico Class Members as "employees" within the meaning of the NMMWA.

103. The NMMWA requires an employer like Wexford to pay overtime to all non-exempt employees.

104. Solis and the other New Mexico Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

105. Within the applicable limitations period, Wexford had a policy and practice of failing to pay proper overtime to the New Mexico Class Members for their hours worked in excess of 40 hours per week.

106. As a result of Wexford's failure to pay proper overtime to Solis and the New Mexico Class Members for work performed in excess of 40 hours in a workweek, Defendants violated the NMMWA.

107. Solis and the New Mexico Class Members are entitled to overtime wages under the NMMWA in an amount equal to 1.5 times their rates of pay, plus treble damages, attorney's fees, and costs. NMSA § 50-4-26.

### THIRD CAUSE OF ACTION—UNJUST ENRICHMENT
### AS TO SOLIS AND THE NEW MEXICO CLASS

108. Solis incorporates each allegation set forth in paragraphs 1 to 89.

109. Wexford's acts and omissions in failing to pay wages to Solis and the New Mexico Class members was done knowingly, willfully, or with reckless disregard of the rights of Solis and the New Mexico Class members.

110. Wexford accepted the benefits of Solis and the New Mexico Class members' work, including financial benefits.

111. As a result of its unlawful acts and omissions, Wexford received substantial benefit in the form of financial compensation that rightfully belonged to Solis and the New Mexico Class members.

112. It would be unjust to allow Wexford to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Solis and the New Mexico Class members the earned and agreed-upon wages they were entitled to under New Mexico law.

113. Wexford has been unjustly enriched by its unlawful acts and omissions.

114. Solis and the New Mexico Class members are entitled to recover for Wexford's unjust enrichment, including restitution and penalties.

115. Solis and the New Mexico Class are entitled to recover attorneys' fees and costs.

116. Solis and the New Mexico Class members are entitled to exemplary damages due to Wexford's unjust enrichment.

117. A constructive trust should be imposed on Wexford, and the Court should sequester any benefits or money wrongfully received by Wexford at the expense of Solis and the New Mexico Class members.

**RELIEF SOUGHT**

Solis prays for judgment against Wexford as follows:

    a. For an order certifying a class action for the New Mexico law claims pursuant to Federal Rule of Civil Procedure 23;

    b. For an order finding Wexford liable for violations of federal wage laws with respect to Solis;

    c. For an order finding Wexford liable for violations of New Mexico wage laws with respect to Solis and all New Mexico Class members covered by this case;

  d. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Solis;

  e. For a judgment awarding all unpaid wages, liquidated damages, restitution, penalties, and exemplary damages under New Mexico wage laws to Solis and all New Mexico Class members covered by this case;

  f. For a judgment awarding attorneys' fees to Solis and the New Mexico Class members covered by this case;

  g. For a judgment awarding costs of this action to Solis and the New Mexico Class members covered by this case;

  h. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Solis and the New Mexico Class members covered by this case; and

  i. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
 **Matthew S. Parmet**
 D.N.M. Id. # 16-155
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**C. Ryan Morgan, Esq.**
D.N.M. Id. # 22-20
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 867-4791
Email: rmorgan@forthepeople.com

**Andrew R. Frisch**
FL Bar # 027777
(*admission pending*)
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324

                        Telephone: (954) WORKERS
                        Facsimile: (954) 327-3013
                        Email: AFrisch@forthepeople.com

                        **Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

                        */s/ Matthew S. Parmet*
                        _____
                        **Matthew S. Parmet**