# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| SANDRA SOLIS, individually and on behalf of all others similarly situated, | **Case No. 2:22-cv-00878-MLG-GBW**<br>Fed. R. Civ. P. 23 Class Action |
| v. | Judge Matthew L. Garcia |
| WEXFORD HEALTH SOURCES, INC. | Chief Mag. Judge Gregory B. Wormuth |

## PLAINTIFF'S UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT

Plaintiff Sandra Solis submits this Unopposed Motion to request that the Court grant preliminary approval to their settlement agreement per Rule 1-023(E) NMRA. In support thereof, Plaintiff states as follows:

## INTRODUCTION

The Parties have reached a settlement of this class action wage case and respectfully submit their Settlement Agreement and Release (Exhibit 1) for the Court's approval. Plaintiff asserts that the agreement satisfies all criteria for approval. The Agreement is fair in broad terms because it constitutes a reasonable compromise of the disputed alleged unpaid overtime wages for each individual identified in Exhibit B to the Agreement (each a "Class Member"). Therefore, Plaintiff respectfully moves the Court for an order:

1. Granting preliminary approval to the Settlement Agreement;

2. Approving the Notice of Settlement (Exhibit A to the Settlement Agreement) and requiring Plaintiff to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to object to the Settlement, and permitting Class Members forty-five (45) days from the date of Notice mailing to object to the Settlement or withdraw from the Settlement; and

3. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

## PROCEDURAL AND FACTUAL HISTORY

On November 17, 2022, Plaintiff filed the above-captioned class action lawsuit against Defendant alleging that Defendant failed to make required wage payments due to its non-exempt workforce as a result of an outage by Defendant's timekeeping and human resources system operated and maintained by the Ultimate Kronos Group, Inc. ("UKG"). This in turn caused certain wages to be delayed in payment to the Class, and Plaintiff alleges this violates the overtime wage requirements of the New Mexico Minimum Wage Act, § 50-4-19, *et. seq*. ("NMMWA").

On December 11, 2021, the Kronos cloud system became inoperable, which UKG reported was caused by a cyberattack. USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021). As a result of the Kronos cyberattack, Wexford was unable to access any timekeeping or human resources data stored or entered into the Kronos system related to time worked and which impacted their ability to accurately pay employees during the time period from December 11, 2021 to January 14, 2022 (the "Kronos Outage").

During the Kronos Outage, Wexford relied on existing time and pay information for each employee to continue paying the employees during the Kronos Outage, specifically paying each employee the amount each had earned in the pay period preceding the Kronos Outage. As soon as the Kronos Outage ended on January 14, 2022, Wexford reconciled payments[1] made during the Kronos Outage, which reconciliation was completed by February

---

[1] After Kronos data became available Wexford compared the amounts it paid to each employee based on existing data during the Kronos Outage with the Kronos timeclock information available after the Kronos Outage to determine if it over or under paid each employee. If any underpayment was calculated, Wexford paid the employee the amount of the underpayment.

18, 2022. Those employees underpaid during the Kronos Outage received a reconciliation payment. This lawsuit resulted seeking additional penalties under New Mexico law.

During the lawsuit, the Parties engaged in motion practice (and a hearing) regarding Motions to Dismiss filed by Wexford (*see* D.E. 4, 6, 9, 16, 19, 26, and 37); engaged in written discovery and depositions; and ultimately resolved the matter before Magistrate Judge Gregory B. Wormuth at a settlement conference on July 11, 2024 (*see* D.E. 61). At the mediation, the parties engaged in sustained, arms-length negotiations. As a result of the mediation, the Parties have agreed to the settlement terms described below.

## SUMMARY OF THE SETTLEMENT TERMS

Here, the Settlement will pay each Class Member full relief under New Mexico law. Specifically, the amounts listed in Exhibit B to the Settlement Agreement and Release are double the amount of the overtime not paid during the Kronos Outage, plus two months of interest (at 8.75%) as dictated under New Mexico law. In addition, Ms. Solis is receiving an additional $2,000 per the Settlement Agreement as a service award for her efforts in bringing these claims on behalf of the class and pursuing them to a fruitful conclusion. In addition, during the mediation and as outlined in the Settlement Agreement, Wexford agreed to pay Plaintiff's attorneys fees and costs in addition to the amounts described in the attached agreement..

In exchange for such payment, Class Members will release all claims under law related to the Kronos Outage (*see* Ex. 1, ¶ 3). Upon the Court's authorization, Plaintiff, through a Settlement Administrator, will disseminate the Notice (Exhibit A to the Settlement Agreement) to the Class Members to inform them of the settlement terms and to afford them the opportunity to object or withdraw to the Settlement within forty-five (45) days from the date of Notice mailing. Plaintiff

will then move for final approval of the Settlement, followed by a fairness hearing before this Court.

Within fourteen (14) days after the Court's final approval of this settlement agreement, whichever is later, Defendants will pay the Gross Settlement Amount to the Settlement Administrator for disbursement of the settlement payments to Class Members, the service award to Plaintiff, and attorney fees and costs to Class Counsel. Any class member who has not cashed his/her check by 180 days after mailing will be reported to the Parties by the Settlement Administrator and such funds will be donated as a *cy pres* award to the National Employment Law Project.

## ARGUMENT

I. **The Court Should Find that the Settlement Agreement is Fair and Reasonable for the Purposes of Fed. R. Civ. P. 23 and that the Proposed Notice of Settlement is Sufficient under Rule 23(c).**

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,' because settlement of complex disputes "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Acevedo v. Sw. Airlines Co.,* Civil Action No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019) (citing *Armstrong v. Bd. Of Sch. Dirs.,* 616 F.2d 305, 313 (7th Cir. 1980). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of the claims of a certified class. "The authority to approve a settlement of a class ... action is committed to the sound discretion of the trial court." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id.*

In deciding whether to approve class action settlement agreements, courts must ask whether: the proposal was negotiated at arm's length and fairly negotiated; the relief for the class is adequate considering the costs, risks, and delay of trial; the effectiveness of methods of distribution of relief to the class; and the terms of any award of attorney's fees is fair. Fed. R. Civ. P. 23(e)(2).

In the Tenth Circuit, the Court must also consider additional factors which partially overlap with the Rule 23(e)(2) factors: (1) that the proposed settlement is honestly negotiated; (2) that questions of law and fact exist and place outcome of litigation in doubt; (3) that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation; and (4) judgment of the parties that the settlement is fair. *Rutter & Wibanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). As discussed below, the Settlement meets the standards for both preliminary and final approval. As a result, Plaintiffs and Defendant believe that the Settlement should be preliminarily approved so that notice can be provided to Class Members.

### 1. The Agreement was reached using arm's-length negotiations.

In this case, this Motion is unopposed and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Id*. As the Court is well aware, this action has been pending for almost two years. Since the inception of this case, the Parties have extensively briefed numerous contested issues, engaged in written discovery and depositions, and participated in a hotly contested mediation before Magistrate Judge Wormuth. In addition, the Parties were represented by "counsel with expertise on the [wage and hour laws] and complex

class action litigation." *Id*.  These factors support the integrity of the Parties' settlement negotiations.

Here, the parties engaged in "extensive, arms'-length and non-collusive negotiation between capable counsel…" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1240–47 (D.N.M. 2012). Their negotiations spanned significant pre-mediation communication and negotiation in front of Chief Magistrate Judge Gregory Wormuth on the terms of the agreement. Under such circumstances, the Court may presume the settlement to be fair, adequate, and reasonable. *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006).

### 2. The settlement agreement provides adequate relief for the parties considering the costs, risks, and delay of further litigation.

As NMSA 1978 § 50-4-19 makes clear, Class Members were entitled to additional penalties if they prevailed on the issue of whether Wexford violated New Mexico law by failing to pay all wages owed during the Kronos Outage.  They also would have obtained no recovery if the Court ruled against them on this issue, thus rendering the case a relative winner-take-all scenario, complete with the attendant risks.  Accordingly, the settlement here which pays all damages that could have been claimed under New Mexico law, including liquidated damages, interest, and fees and costs, supports finding that adequate relief has been obtained.

The parties engaged in extensive discovery including pay records for all affected class members, and conducted depositions in this matter. Plaintiff and her counsel adequately investigated this issue to determine the damages at issue.

Given the substantial dispute as to whether Wexford violated New Mexico law, the parties' respective success at trial would rely on the credibility and consistency of testimony regarding each of the elements courts employ to determine whether Wexford had a good-faith excuse for failing to timely pay all overtime wages due.   The settlement inures fairly, reasonably, and to the

benefit of the class because, among other things, it avoids the attendant risks associated with resolution of these factual and credibility determinations at trial, while giving ample relief to class members.

There was also an overriding public interest in settling this class action. The litigation has been pending for several years, the parties have incurred significant expenses, and further litigation "would require significant judicial and party resources" to try the case. *In re Thornburg,* 912 F. Supp. 2d at 1240–47.  This is even more true should one of the parties appeal a trial loss, which, in addition to increasing both expenses and fees, could serve to delay resolution of this matter by one or possibly even two years.

Because the NMMWA contains a fee-shifting provisions[2], and because Plaintiff believes she and the class were more than likely to prevail at trial on liability, Defendant is able to avoid what would surely have been tens of thousands of dollars in additional defense counsel and potential Class Counsel attorneys' fees related to a trial of the merits of this action.

Given the disputed factual and legal issues in the case, the settlement represents a reasonable resolution of this action and eliminates the risk that the Class might otherwise recover nothing.  Therefore, the recovery represented in this settlement agreement is fair and adequate, and constitutes a reasonable compromise of Class Members' claims.

### 3.  The Method of Distribution is adequate.

The Court must also ensure that the proposed settlement provides an adequate method of distribution of funds. *Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500 GBW/GJF, 2022 WL 2304146, at *6 (D.N.M. June 27, 2022).

---

[2] "The court in any action brought under Subsection D of this section **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant." § 50-4-26(E) NMSA (emphasis added).

Here, Class Members will be given a choice regarding whether they want to object or withdraw from the settlement. If they do not withdraw, then the Class Member will simply receive a check in the mail following final approval. There is no cumbersome claim or notice process. Additionally, the Settlement Administrator will use skip traces to ensure that they have access to the most up-to-date address information for Class Members. This process is as "simple, straightforward, and nonburdensome as possible." *Cisneros,* 2022 WL 2304146, at *6 (citing *In re Samsung Top-load Washing Mach. Mktg., Sales Prac. & Prods. Liab. Litig.,* MDL Case No. 17-ml-2792-D, 2020 WL 2616711, at *16 (W.D. Okla. May 22, 2022) (aff'd, 997 F.3d 1077 (10th Cir. 2021)).

**4.    Counsel are Experienced and Believe the Settlement to be Fair and Reasonable**

Class Counsel has broad experience in wage and hour class action practice. *See* Exhibit 3, Declaration of Matthew S. Parmet; Exhibit 2, Declaration of C. Ryan Morgan. Mr. Parmet and Mr. Morgan have, combined, over 34 years of litigation experience, including class and collective action claims on behalf of workers. Defense counsel is also experienced in wage and hour litigation – having worked in the labor and employment law field since 1994.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). *See also McNeely v. Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *37-38 (W.D. Okla. Oct. 27, 2008 (same). "Here, the parties' counsel — among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions — unanimously support this settlement." *Lucas*, 234 F.R.D. at 695.

Class counsel believes that this settlement is fair and reasonable. Defense counsel also agrees that the settlement is fair and reasonable, especially given that the amount of the settlement

8

and several key terms were based on the assessment of Chief Magistrate Judge Wormuth, who has significant knowledge and experience with class actions in New Mexico.

As such, this factor further supports granting preliminary approval.

5.  **The Proposed Notice of Settlement is The Best Practicable Method to Notify the Class Members and to Determine the Reaction of Parties Interested in the Settlement.**

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1) requires the Court to ensure that the class receives notice of the proposal and has an opportunity to object to the class. Pursuant to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "While due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion." *Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993), overruled in part on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). "The standard for the settlement notice under Rule 23(e) is that it must "fairly apprise the class members of the terms of the proposed settlement and their options." *Id*. The proposed notice here comports with Rule 23(e).

Here, the Parties have agreed upon a proposed class notice, and seek an order requiring them to disseminate the attached Notice of Settlement (Exhibit A to the Settlement Agreement) to inform the Class Members of the terms of the Settlement, and to provide all Class Members with the opportunity to object to or withdraw from the Settlement.

The Administrator will both mail and email the Notice to the Class Members' last known physical and email address, which is the best practicable method to provide Class Members with the Notice.  The Parties further request that the Court permit Class Members forty-five (45) days from the date of mailing to object to the Settlement or withdraw from the Settlement.  This provides

Class Members a sufficient amount of time to consider their options.  The Parties finally request that the Court set a final fairness hearing at its earliest convenience after sixty (60) days subsequent to its preliminary approval of the Agreement so that any objectors to the Settlement may be heard. After the final fairness hearing, the Court will have the information it needs, including whether any class members object to the settlement, to evaluate the reaction of Parties interested in the Settlement. This notice complies with Rule 23(e)(1).

## II.    The Court Should Rule that the Service Award is Reasonable

"[N]amed plaintiffs...are eligible for reasonable incentive payments" as part of a class action settlement.  *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  "Incentive awards are typical in class action cases." *Acevedo v. Southwest Airlines Co.,* 2019 WL 6712298, at *4 (citing 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008)).

Courts have recognized that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class.  *See UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235–36 (10th Cir. 2009).  "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id*. at 235 (citations omitted).

Plaintiff contends that the modest service award here is reasonable and in line with similar awards approved in other cases.  As this Court noted in *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021), the requested service award proposed here is well below the range of incentive payments approved in similar

wage and hour cases, citing to, *inter alia*, *Jones v. I.Q. Data Int'l, Inc*., No. 1:14-cv-00130-PJK-RHS, 2015 WL 5704016, at *2, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving incentive award of $20,000.00); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); *Glass v. UBS Fin. Servs*., No. C-06-4068 MMC, 2007 WL 474936, at *7, 2007 U.S. Dist. LEXIS 8476, at *16-17 (N.D. Cal. 2007) (district court awarded each of the class representatives in an overtime class action a service award of $25,000.00); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (approving a $50,000 service award); *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (award of $50,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000).

Additionally, the Notice of Class Action Settlement mailed to the class members will include information about the proposed service award.  *See Key v. Butch's Rat Hole & Anchor Serv*., 2022 U.S. Dist. LEXIS 26795, *10 (D. New Mexico, 2022) (taking into account the fact that disclosure of the service award was contained in the notice to the class in analyzing and approving incentive award).

When evaluating the reasonableness of a service award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $2,000.00 service award to Ms. Solis here is appropriate because Ms. Solis expended significant efforts during this litigation to ensure that the action was brought to a successful conclusion on behalf of the Class.  Ms. Solis worked closely with Class Counsel to develop facts, review documents and data produced, discuss case strategy, sit for a deposition and engage in settlement negotiations.

Ms. Solis took on substantial risk of retaliation by other employers in the region by coming forward with reports of Defendant's wage and hour law violations when no other employees were willing to do so. Ms. Solis advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations.  The service award sought here is reasonable.  *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC,* No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021) (approving incentive payment of $25,000) and gathering citations of other cases with similar awards in "similar wage and hour cases"); *Cook,* 142 F.3d at 1016 (7th Cir.1998) (approving incentive award of $25,000 for named plaintiff); *Glass v. UBS Fin. Servs., Inc*., No. C–06–4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 incentive award to named plaintiff).

**III.     The Court Should Find that the Attorney Fee Award is Appropriate at the Final Approval Stage.**

Plaintiff will move separately for approval of the attorney fee provisions of the Settlement during the final approval process.

**CONCLUSION**

The settlement agreement should be approved by the Court.  The terms of the settlement have been approved by the Parties and their respective counsel. The settlement was negotiated at

12

arms' length with the assistance of Chief Magistrate Judge Wormuth. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

The Settlement Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for several years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard fought negotiations. Ultimately, there can be no question that this Settlement Agreement represents good fair value for the Class Members.

For the reasons set forth above, the Parties respectfully request that the Court enter an Order:

1. Granting preliminarily approval to the Settlement Agreement;

2. Approving the Notice of Settlement (Exhibit A to the Settlement Agreement) and requiring Plaintiff, through an administrator, to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to object to or withdraw from the Settlement, and permitting Class Members forty-five (45) days from the date of Notice to do so; and

3. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

    **Matthew S. Parmet**
    D.N.M. Id. # 16-155
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5200
matt@parmet.law

**C. Ryan Morgan, Esq.**
D.N.M. Id. # 22-20
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:    (407) 420-1414
Facsimile:    (407) 867-4791
Email:    rmorgan@forthepeople.com

**Attorneys for Plaintiff**