UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| SANDRA SOLIS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.. | Case No. 2:22-cv-00878-MLG-GBW<br><br>FED. R. CIV. P. 23 Class Action |

**PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

Plaintiff Sandra Solis requests final approval of this class action settlement. The Court preliminary approved the settlement, and notice issued to the settlement class. *See* D.E. 76. After the full notice period, not a single class member objected to the settlement or opted-out. This is no surprise. The proposed settlement pays Solis and the class members 100% of the damages they would be entitled to at trial, without even deducting any costs or fees, which will be paid **in addition to** the class members' payments. The Agreement is fair and reasonable, and the Court should:

1. Grant final approval to the Settlement Agreement;

2. Approve a Service Award to Solis;

3. Approve Class Counsel's requested attorneys' fees and costs;

4. Designate the National Employment Law Project as the *cy pres* beneficiary for any unclaimed settlement funds; and

5. Dismiss this Action with prejudice.

1

## PROCEDURAL AND FACTUAL HISTORY

Wexford provides health care in correctional facilities across the United States, including New Mexico. To track its employees' time, Exford used a Kronos system provided by the Ultimate Kronos Group, Inc. (UKG).

UKG reported a cyberattack on the Kronos system beginning on or about December 11, 2021, which made Kronos inoperable. USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021). As a result of the Kronos cyberattack, Wexford was unable to access any timekeeping or human resources data stored or entered into the Kronos system related to time worked and which impacted their ability to accurately pay employees during the time period from December 11, 2021 to January 14, 2022 (the "Kronos Outage").

During the Kronos Outage, Wexford relied on existing time and pay information for each employee to continue paying the employees during the Kronos Outage, specifically paying each employee the amount each had earned in the pay period preceding the Kronos Outage. After Wexford's Kronos Outage ended on January 14, 2022, Wexford reconciled payments made during the Kronos Outage. The reconciliation was completed by February 18, 2022,[1] with Wexford providing a reconciliation payment to those employees underpaid during the Kronos Outage.

Solis worked for Wexford in New Mexico during the Kronos outage. Solis filed suit against Wexford, alleging that Wexford's failure to pay wages on time and in full, to her and Wexford's other New Mexico workers, violated the New Mexico Minimum Wage Act, § 50-4-19, *et. seq.*

---

[1] Wexford compared the amounts it paid to each employee based on existing data during the Kronos Outage with the Kronos timeclock information available after the Kronos Outage to determine if it over or under paid each employee. If any underpayment was calculated, Wexford paid the employee the amount of the underpayment.

2

(NMMWA). Solis contended that, even if Wexford ultimately paid the wages due, the payment of wages was nonetheless untimely under New Mexico law, and that Wexford's liability for liquidated damages under New Mexico law was not relieved by the payment of these wages.

During the lawsuit, the Parties engaged in extensive motion practice and discovery. The parties briefed and argued successive Motions to Dismiss filed by Wexford (*see* D.E. 4, 6, 9, 16, 19, 26, and 37). They engaged in written discovery and the deposition of Solis. Based on that discovery, the parties agreed to attend a settlement conference with Magistrate Judge Gregory B. Wormuth. Prior to the settlement conference, the parties engaged in sustained, arms-length negotiations. They ultimately reached an agreement as to a settlement for Solis and the class. Consequently, when they attended the settlement conference, the only item remaining to be resolved was the amount of reasonable and necessary attorneys' fees and expenses to be awarded to Class Counsel. Through mediation with Judge Wormuth, the Parties reached a settlement on the attorneys' fees and expenses. Solis moved for preliminary approval of the settlement, which the Court granted on April 22, 2025. *See* D.E. 76.

During the Notice process, no envelopes were returned to counsel as undeliverable, and no class member excluded themselves or objected to this settlement. The Court referred final approval to Judge Wormuth for a report and recommendation.

**SUMMARY OF THE SETTLEMENT TERMS**

Here, the Settlement would pay each Class Member full relief under New Mexico law. Specifically, the amounts allocated to each Class Member are 2x the amount of the qualifying wages that were not timely paid during the Kronos Outage, plus two months of interest at New Mexico's applicable legal interest rate of 8.75% . In addition, Solis would receive $2,000 as a service award for her efforts in bringing these claims on behalf of the class and pursuing them to

a fruitful conclusion. Finally, Wexford would pay attorneys' fees and costs **in addition to** the amounts allocated to Solis and the Class Members.

In exchange for such payment, Class Members will release all claims under law for unpaid or delayed wages related to the Kronos Outage (*see* Ex. 1, ¶ 3). Wexford will send payment to Class Counsel, who will then disbursement the settlement payments to Solis and the Class Members. Any class member who has not cashed their check by 180 days after mailing will be will be donated as a *cy pres* award to the National Employment Law Project.

## ARGUMENT AND AUTHORITIES

Rule 23(e) governs the settlement of Rule 23 class actions. Rule 23 class actions "may be settled . . . only with the [C]ourt's approval." Fed. R. Civ. P. 23(e). Rule 23(e)(2) sets forth the factors that the Court must consider when determining whether to approve the proposed settlement. "If the proposal would bind class members, the [C]ourt may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

The Tenth Circuit provides a separate four-factor test for the approval of class action settlements. *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (*citing In re Motor Fuel Temperature Sales Pracs. Litig.,* 872 F.3d 1094, 1116–17 (10th Cir. 2017)). Under those factors, known as the *Rutter* factors, the Court considers:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable."

*Id.*; *see also, Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002). All these factors are satisfied, and the Court should finally approve the proposed settlement.

### A. The Court Should Grant Final Approval of the Proposed Settlement Under Rule 23.

#### 1. Adequacy of Representation

The class has been well represented in this case. "The first factor focuses 'on the actual performance of counsel acting on behalf of the class.'" *Montgomery v. Continental Intermodal Group-Trucking, LLC*, Civ. No. 19-940 GJF, 2021 WL 1339305, *4 (*quoting* Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). Class Counsel are experienced attorneys who have handled numerous class and collective actions under the FLSA and the NMMWA.

Moreover, Class Counsel have zealously represented the class in this hotly contested case for several years. They have filed and opposed the motions necessary to permit them to bring the litigation to a point where they could obtain a substantial settlement on behalf of the class. Class Counsel have exchanged substantial discovery to permit them to make an assessment of the

5

Plaintiffs' claims. This exchange of information has given Class Counsel a substantial appreciation for both the factual and legal issues at stake in this case, which guided their negotiations with Wexford. *See Anderson Living Trust v. Energen Resources Corp.*, CV No. 13-909 WJ/CG, 2021 WL 3076910, *3 (D.N.M. July 21, 2021) (finding class counsel adequately represented the class under such circumstances).

### 2. Arm's-Length Negotiations

"The second factor focuses on whether the settlement negotiations 'were conducted in a manner that would protect and further the class interests.'" *Montgomery*, 2021 WL 1339305 at *5 (*quoting* Advisory Committee Notes, Fed. R. Civ. P. 23). As noted, this case has been hotly contested from its inception. Wexford filed multiple motions to dismiss (*see* D.E. 4, 6, 9, 16, 19, 26, and 37); engaged in written discovery and depositions; and ultimately resolved the matter before Magistrate Judge Gregory B. Wormuth at a settlement conference on July 11, 2024 (*see* D.E. 61). At the mediation, the parties engaged in sustained, arms-length negotiations to reach settlement. Like another case approved by this very Court, in this case:

> The Court finds that the Settlement Agreement is the product of arm's-length negotiations. This case has been actively litigated, with several disputes raised on both sides. See, e.g., [ ] (Defendants' Motion to Dismiss); [ ] (disputes concerning conditional certification); [ ] (discovery disputes). Settlement negotiations proceeded before [the] Magistrate Judge … to finalize the Settlement Agreement. There is no reason to believe this Settlement Agreement is a product of collusion.

*Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500 GBW/GJF, 2021 WL 2953117, at *6 (D.N.M. July 14, 2021) (Wormuth, Mag.J.).

### 3. Adequacy of the Relief Provided Taking Into Account the Costs, Risks, and Delay of Trial and Appeal

6

"The third factor recognizes that while the 'relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'the cost and risk involved in pursuing a litigated outcome.'" *Montgomery*, 2021 WL 1339305 at *5 (*quoting* Advisory Committee Notes, Fed. R. Civ. P. 23). In determining whether this factor is satisfied, the court considers whether "[t]he relief provided by the Settlement is adequate, taking into account the costs, risk, and delay of trial and appeal; the effectiveness of the proposed method of distribution; and the terms of the proposal for awarding attorneys' fees, including the timing of payment." *Id.* "Where both sides face significant uncertainty, the attendant risks favor settlement." *Id.* at *4 (*citing In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014)). As the proposed settlement provides substantial monetary relief to class members, including all claimed damages under New Mexico law, particularly considering the litigation risks that they face should they proceed, this factor is satisfied here.

As NMSA 1978 § 50-4-19 makes clear, the Class Members were entitled to penalties if they prevailed on the issue of whether Wexford violated New Mexico law by failing to pay all wages owed during the Kronos Outage. They also stood the chance of not recovering on this issue at all. Accordingly, the settlement here, which pays all damages (liquidated damages, interest, and fees and costs) that could have been claimed at trial, makes it a lock that adequate relief has been obtained.

4. **Adequacy of the Relief Provided Taking Into Account the Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims**

"Under this factor, the court 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be alert to whether the claims process is unduly demanding.'" *Id.* (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes)).

7

The method of distributing relief to the class is straightforward and commonly used in wage and hour litigation. It provides for a distribution of the settlement funds based on each individual class member's actual possible damages. Class members are receiving 100% relief under New Mexico law, and attorneys' fees, costs, and Solis's service award are to be recovered in addition to these amounts. Moreover, class members will simply be mailed their settlement funds through the USPS. If any checks are returned undeliverable, they will be forwarded to the forwarding address provided by USPS or located by Class Counsel's efforts.

### 5. Adequacy of Relief Taking Into Account the Proposed Award of Attorney's Fees, Costs, and Expenses

"This factor recognizes that '[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement.'" *Montgomery*, 2021 WL 1339305 at *7, n. 6 (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes)). Here, the proposed attorneys' fees and costs do not reduce the recovery to any class member, since attorneys' fees and costs were negotiated and will be paid in addition to the class members' settlement funds.

The Tenth Circuit applies the *Johnson* factors in making fee award determinations in cases such as this. *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). The twelve *Johnson* factors are:

> (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.

*Id.* at 483, n. 4. "[R]arely are all of the Johnson factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

8

**Amount in Controversy and Results Obtained.** The most important factor is the results obtained. *Lane v. Page*, 862 F.Supp.2nd 1182, 1255 (D.N.M. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). As noted above, the settlement here achieves recovery of 100% of the damages claimed by the class—and will not be reduced at all for attorneys' fees or expenses. The recovery is excellent here.

**Time and Labor Required.** Class Counsel has been vigorously prosecuting this case for almost three years. The case involved written and oral discovery, and several important and fiercely contested motions. In all, Class Counsel estimates they have devoted at least 178 hours to this matter, with at least 155 of those hours attributable to the work by Mr. Parmet, Mr. Morgan, and Mr. Frisch.

Past awards in this District have recognized reasonable hourly rates in wage-and-hour cases for attorneys with less experience than Class Counsel, of at least $325[2] to $384[3] per hour. Class Counsel here believes their knowledge, education, and experience merit rates greatly in excess of these. For example, Matthew Parmet, was awarded fees at $395 per hour in *Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018). Adjusted for inflation, this would be $514.81 today. Mr. Parmet was awarded the same amount in another comparable district, the Western District of Pennsylvania, in 2017, in Andrews v. Pacific Process Systems., Inc., No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017), which would be

---

[2] A court in this District awarded $200 per hour to a 12-year attorney in a wage-and-hour case in 2006. *Ellison v. GAB Robins, Inc.*, No. CV 02-127 MV/LFG, 2006 WL 8444544, at *10 (D.N.M. Jan. 26, 2006) (Garcia, C.Mag.J.). Adjusted for inflation, using the Bureau of Labor Statistics' CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm, this would be $325.82 today.

[3] A court in this District awarded $275 per hour to experienced counsel in a wage-and-hour case in 2012. *Amezguita v. Dynasty Insulation, Inc.*, No. CV 10-1153 MV/CG, 2012 WL 12973891, at *2 (D.N.M. Oct. 18, 2012) (Vazquez, J.). Adjusted for inflation, this would be $384.05 today.

adjusted to $517.31 today. This amount is consistent with the rate normally charged by Mr. Parmet for hourly work, which is no less than $550 per hour regardless of the location where a matter is pending (although Mr. Parmet's firm is based in Houston) and whose regular hourly rate does not account for the contingency nature of the fee awards in *Keddy* or *Andrews*. Regarding a reasonable hourly rate for Morgan & Morgan attorneys, C. Ryan Morgan, was awarded fees at the rate of $600 per hour in *Hightower v. Waste Pro of Florida, Inc.*, No. 4:22-cv-00076-MW-MAF, ECF No. 39, at *11 n.8 (N.D. Fla. Sept. 23, 2022). Adjusted for inflation, this amount would be $653.04 today. Less than two months ago, Mr. Morgan was awarded a rate of $625 per hour after a successful wage-and-hour jury trial in *Kincaid v. Pasha Atlanta, LLC*, No 1:23-cv-03592-TWT, ECF No. 123, at *4 n.2 (N.D. Ga. Jul. 30, 2025). Andrew Frisch was awarded a rate of $395 per hour in a Jacksonville arbitration case two years ago. *Agbondinmwin v. The CSI Companies, Inc.*, No. 02-22-0001-36755, at *13 (AAA Jul. 17, 2023). Adjusted for inflation, this would be equivalent to $417.43. One year ago, Mr. Frisch was awarded an hourly rate of $650 per hour in a series of arbitrations in Puerto Rico. *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5595, at *14 (AAA, Aug. 12, 2024); *Tyndall v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5597, at *14 (AAA, Aug. 12, 2024); *Yeager v. Mammoth Energy Servs., Inc.*, No. 01-19-0002-5601, at *14 (AAA, Aug. 12, 2024).

In this case, a deep dive into hourly rates is not necessary. Class Counsel has analyzed their hours using a blended, reduced rate of $355, based on *Ellison* and *Amezguita*.[4] Class Counsel points to past awards merely to show that, even at a rate of $355, Class Counsel need expend

---

[4] Three associates at Class Counsel's law firms performed 23 of the 178 hours in this matter. Given this proportion of the attorneys' fees, as well as the reduction in Mr. Parmet, Mr. Morgan, and Mr. Frisch's rates, which remains well above the fees sought, a detailed analysis of associate rates was not necessary.

"only" 122 hours to account for the entire fee award of $43,000, which does not include the expenses that Class Counsel will bear. Given that Class Counsel expended more than 178 hours—Class Counsel could have sought fees of at least $100,900 based on their normal hourly rates, plus expenses ($63,190 at the blended, reduced rate of $355). Instead, Class Counsel has compromised their rates and expenses to finally resolve this case.

**Novelty and Difficulty of the Case / Skill Required / Attorney Skill and Reputation.** Solis has outlined in brief the history of this case and the unique complex issues that the Kronos litigation has brought to wage and hour cases. Class Counsel has extensive experience handling similar Kronos outage litigation. *See* D.E. 67-3, at pp. 4-5; and D.E. 67-2, at p. 4. No firms have brought more Kronos outage related wage and hour actions than Class Counsel here.

**Preclusion of Other Employment.** Given the work performed on this case, Class Counsel's work on this case precluded them from accepting other potential cases.

**Customary Fee / Whether Fixed or Contingent.** The requested fee is being paid in addition to the Class, which is receiving 100% of all available damages. Further, Class Counsel handled this matter on a purely contingent basis, with no guarantee of being paid. *See Acevedo*, 2019 WL 6712298, *5 (citing and quoting *Been v. O.K. Indus., Inc.*, No. CIV-02- 285-RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.")) As in *Acevedo*, "Class Counsel assumed the risk that the litigation would yield no recovery and for years received no compensation for the time and expenses they spent during the litigation. The Court has recognized in other cases that fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis." *Acevedo*, 2019 WL 6712298 at *5 (cleaned up;

internal quotations and citations removed). Here, Class Counsel is simply being paid for the time expended on this case in addition to the full amounts to be recovered by the Class.

Further, the agreement on fees and expenses was reached separately after the parties had settled on the underlying claims. The settlement of liability prior to fees and expenses is indicative of the fairness of the settlement on both liability and as to fees and expenses. *See Lane v. Page*, 862 F. Supp. 2d 1182, 1258 (D.N.M. 2012) (Browning, J.) ("[T]he attorney's fees and expenses were separately negotiated after the Settlement was negotiated …. [T]hat the fees were negotiated after the Settlement reduces the risk of any improper bargaining, such as reducing the class award so that the attorney can be paid quickly.").

**Undesirability of the Case.** Given the complex wage and hour issues involved in this case, which requires specialized skills and knowledge of Class Counsel, many lawyers would find this case undesirable, particularly on a classwide basis. *Id. Acevedo*'s observations regarding the undesirability of contingency work is equally applicable here:

> Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendant could have succeeded.

*Id.*

In addition to their fees, the award to Class Counsel includes the reimbursement of $1,567.17 for reasonable and necessary expenses incurred in the prosecution of this case. *Montgomery*, 2021 WL 1339305 at *8 (approving recovery of "[t]he out-of-pocket litigation expenses and costs incurred by Class Counsel") (*citing and quoting Candelaria v. Health Care Serv. Corp.,* No. 2:17-cv-404-KG-SMV, 2020 WL 6875828 at *4 (D.N.M. 2020) (in addition to awarding the cost of

hiring a settlement administrator, court awarded Class Counsel all "actual out-of-pocket litigation expenses and costs incurred in prosecuting this case, including costs for court fees, electronic research, postage and courier fees, photocopies, and the fees of the private mediator[.]")). This amount does not include the cost of self-administering the settlement, which Class Counsel will also bear. By deducting these amounts from their fees, Class Counsel will bear the cost of these fees and expenses from their recovery.

### 6. Adequacy of Relief Taking into Account Any Agreement Required to Be Identified Under Rule 23(e)

"Under this factor, the parties are required [by Rule 23(e)(3)] to 'file a statement identifying any agreement made in connection with the proposal.'" *Montgomery*, 2021 WL 1339305 at *8. The parties have filed the Settlement Agreement with the Court. The parties have no other agreement between them pending guidance from the Court in response to this motion. *Id.*

### 7. The Proposal Treats Class Members Equitably Relative to Each Other

"The final factor seeks to prevent the 'inequitable treatment of some class members vis-a-vis others.' 'Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Id.*, *8 (*quoting* Fed. R. Civ. P. 23 (Advisory Committee Notes); internal citation omitted). As noted above, the Settlement pays each class member 100% of their potential damages under New Mexico law, utilizing each Class Member's individual pay data and alleged delayed payment during the Kronos Outage.

The Settlement Agreement provides for a $2,000.00 incentive payment to Solis. "[N]amed plaintiffs...are eligible for reasonable incentive payments" as part of a class action settlement. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (quoting

13

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). "Incentive awards are typical in class action cases." *Acevedo v. Southwest Airlines Co.,* 2019 WL 6712298, at *4 (citing 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008)).

Courts have recognized that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235–36 (10th Cir. 2009). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id*. at 235 (citations omitted).

The modest service award here is reasonable and in line with similar awards approved in other cases. It is well below the range of service awards in similar wage and hour cases. *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *9 (D.N.M. Apr. 9, 2021) (citing *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-cv-00130-PJK-RHS, 2015 WL 5704016, at *2, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. 2015) (approving $20,000.00 service award); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ($30,000, $15,000, and $7,500); *Glass v. UBS Fin. Servs*., No. C-06-4068 MMC, 2007 WL 474936, at *7, 2007 U.S. Dist. LEXIS 8476, at *16-17 (N.D. Cal. 2007) ($25,000.00); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) ($50,000); *Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) ($50,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ($55,000, $ 35,000)).

Additionally, the fact that the settlement notice included information about the proposed service award, and no class member objected, weighs in favor of its approval. *See Key v. Butch's Rat Hole & Anchor Serv.*, 2022 U.S. Dist. LEXIS 26795, *10 (D. New Mexico, 2022).

When evaluating the reasonableness of a service award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $2,000.00 service award to Solis here is appropriate because Solis expended significant effort during this litigation to ensure that the action was brought to a successful conclusion on behalf of the Class. Solis worked closely with Class Counsel to develop facts, review documents and data produced, direct case strategy, sit for a deposition, and remain engaged with settlement negotiations.

### B. The Proposed Settlement Satisfies the Tenth Circuit's *Rutter* Factors

Many of the *Rutter* factors overlap those under Rule 23(e)(2). The first factor is whether the proposed settlement was fairly and honestly negotiated." *Id.* As in *Montgomery*, the proposal in this case "was the product of real, arms-length negotiations between experienced counsel well-versed in the legal and factual issues presented by this case. Each party was represented by competent counsel who conducted the litigation vigorously and professionally, and there is no indication or evidence that any party was unfairly pressured or coerced into agreeing to the Settlement." *Id.*, (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137-38 (D. Colo. 2009)).

Second, as in any litigation, there are questions of law and fact that pose risk to Solis and the class members' claims should this case proceed. Given these risks, Class Counsel are of the opinion that the proposed settlement is an excellent result and fair and reasonable to the class.

Third, against the backdrop of these risks, which could eliminate entirely the possibility of recovery for the class, the value of the immediate recovery that the proposed settlement provides far outweighs the possibility of future relief after what would certainly have been a protracted and expensive litigation.

Finally, Class Counsel believe the settlement is fair and reasonable. Solis and the Class Members have been represented by competent and experienced counsel throughout this case, and their judgment is that the recovery in this case is an excellent result for the class. *Montgomery* at \*10 ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006))); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at \*11-\*12 (W.D. Okla. 2008).

The lack of any exclusions and the absence of any objections indicates the Class Members approve of the settlement as fair and reasonable. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (internal quotation omitted)); *Montgomery*, 2021 WL 1339305 at \*10 (noting "not a single Class Member has objected to the Settlement" and finding the fourth *Rutter* factor supported settlement approval); *Aragon v. Clear Water Products LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at \*3 (D. Colo., Dec. 18, 2018) ("Class members' apparently positive response to the settlement is further evidence that it is fair, adequate, and reasonable."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding settlement was strongly supported where only 16 of 329 class members

members (4.86%) opted-out); *Riker v. Gibbons*, No. 3:08–cv– 00115, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("The small number of objections is an indication that the settlement is fair, adequate, and reasonable."); *Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

## CONCLUSION

Solis requests the Court issue an order (1) finally approving the settlement reached by the parties, (2) approving a Service Award to Solis in the amount of $2,000; (3) approving Class Counsel's application for an award of attorneys' fees and costs in addition to the amounts being paid to Class Members; (4) designating the National Employment Law Project as the *cy pres* beneficiary; and (5) dismissing this action with prejudice.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
D.N.M. Id. # 16-155
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5200
matt@parmet.law

**C. Ryan Morgan, Esq.**
D.N.M. Id. # 22-20
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:   (407) 420-1414
Facsimile:    (407) 867-4791
Email:          rmorgan@forthepeople.com

17

> **Andrew R. Frisch**
> D.N.M. Id. # 22-345
> **MORGAN & MORGAN, P.A.**
> 8151 Peters Road, Suite 4000
> Plantation, Florida 33324
> Telephone: (954) WORKERS
> Facsimile: (954) 327-3013
> Email: AFrisch@forthepeople.com
>
> **Attorneys for Plaintiff**

## CERTIFICATE OF CONFERENCE

Prior to filing this motion, Class Counsel conferred with Defendant's counsel, and Defendant was unopposed to the relief requested.

> *s/ Matthew S. Parmet*
> Matthew S. Parmet